**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 14 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ARIZONA PUBLIC SERVICE
COMPANY,

Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,

Respondent.

No.    17-73244

FERC No. ER16-1342-001

MEMORANDUM[*]

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted May 15, 2019
San Francisco, California

Before:  WALLACE, IKUTA, and CHRISTEN, Circuit Judges.

Petitioner Arizona Public Service Company (APS) challenges two orders of

respondent Federal Energy Regulatory Commission (FERC or "Commission")

with respect to the termination of the fifty-year-old Edison-Arizona Transmission

Agreement ("Transmission Agreement") between APS and Southern California

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Edison Company ("Edison").[1] We have jurisdiction pursuant to 16 U.S.C. § 825*l*(b). We deny the petition in part and grant the petition in part, and remand to FERC for further proceedings.

1. <u>Reimbursement Payment.</u> On April 1, 2016, APS submitted a notice of cancellation of the Transmission Agreement, effective July 6, 2016. APS also sought FERC authorization to pay Edison a $12,688,457 negotiated reimbursement payment pursuant to section 25.4 of the Transmission Agreement, which APS would then recover from its ratepayers through its transmission formula rates. On July 1, 2016, FERC accepted APS's notice of cancellation, but rejected APS's proposal to recover the reimbursement payment from its ratepayers. FERC concluded that the reimbursement payment calculation constituted "a rate change under section 205 of the FPA . . . . requir[ing] cost support and Commission review." Specifically, FERC explained that APS's "$12,688,457 final payment to SoCal Edison . . . supplants two components of the filed rate: the monthly charge to SoCal Edison and the negotiation process set forth in section 25.4."

> Our review of a FERC decision is limited to whether the decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law. As long as the record reflects that the decision was based on a consideration of relevant factors

---

[1] As the parties are familiar with the facts, we do not recount them here.

and there was no clear error of judgment the decision was not arbitrary or capricious.

*Cal. Dep't of Water Res. v. FERC*, 341 F.3d 906, 910 (9th Cir. 2003) (internal citations omitted) (internal quotation marks omitted); *see also* 5 U.S.C. § 706(2)(A). FERC's conclusion that the reimbursement payment altered the filed rate in the Transmission Agreement was not arbitrary or capricious. Although FERC accepted the Transmission Agreement in 1967, that acceptance did not constitute approval of the yet-to-be-negotiated reimbursement payment because it was not possible for FERC to say whether the future payment would be "just and reasonable" without a proposed formula with sufficient specificity.

Rate changes require cost support and FERC review under section 205 of the Federal Power Act to ensure that the rate is "just and reasonable." 16 U.S.C. § 824d(a); *see Mont. Consumer Counsel v. FERC*, 659 F.3d 910, 914 (9th Cir. 2011). Courts afford "great deference to the Commission in its rate decisions[,]" such as when determining whether a rate is "just and reasonable[.]" *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008). FERC's order concluded that APS failed to satisfy its burden to provide cost support for its proposed rate. FERC took issue with APS's "beneficial use" calculation because: (1) it rested on a service life estimate that APS failed to provide or support; (2) "under the Commission's straight-line, remaining life

3

depreciation method, utilities may implement changes in the estimated service life *prospectively only*, over the remaining life of the assets"; and (3) it did not reflect the under-recovery of any expenses, contrary to APS's assertions. APS disputes this rationale, but FERC's conclusions were reasonable, particularly given the limited information APS provided as to how it arrived at its "beneficial use" amount. FERC's conclusion that APS failed to provide adequate cost support for its proposed reimbursement payment has not been shown to be arbitrary or capricious**.**

  2. <u>Expiration Agreement.</u> FERC determined that the 2015 Agreement Concerning the Expiration of the Edison-Arizona Transmission Agreement (the "Expiration Agreement") was subject to FERC's jurisdiction because it revised the Transmission Agreement by setting a new termination date. FERC thus ruled that APS should have filed the Expiration Agreement with FERC pursuant to section 205(c) of the FPA, and FERC referred the matter to its Office of Enforcement for further examination. The Transmission Agreement does not specify any termination date; rather it defines its "term" as lasting "during the term of the New

4

Lease, and any and all renewals or extensions thereof."[2]  APS asserts that the Transmission Agreement expired on its own terms on July 6, 2016 because the relevant lease is the 1966 Four Corners Project Lease with Navajo Nation, which became effective on July 6, 1966 for a period of 50 years.  FERC contends that the Amendment and Supplement No. 3 to the 1996 Lease ("Supplement No. 3") qualifies as an "extension" of the lease under the Transmission Agreement's "term" definition because Supplement No. 3 states that "[t]he 1960 Lease and the 1966 Lease . . . are extended to July 6, 2041[.]"  But Edison was not a party to Supplement No. 3, and APS argues that the parties intended for Supplement No. 3 to be a separate lease, not a renewal or extension of the New Lease, for purposes of determining the Transmission Agreement's expiration date.

The Commission has interpreted FERC's Rule 217 to mean that summary disposition is only appropriate where "there are no material facts in dispute or because the facts presented by the proponent have been accepted in reaching the decision."  *Pac. Gas & Elec. Co. v. FERC*, 746 F.2d 1383, 1386 (9th Cir. 1984); *see* 18 C.F.R. § 385.217(b).  In reviewing FERC's decision that summary

---

[2]    The New Lease is defined as: "The provisions of the Supplemental Lease from the Navajo Tribe of Indians as lessors, which are applicable to the Four Corners Project, and under which the Participants, as lessees, shall acquire leasehold rights to construct, reconstruct, use, operate, maintain, relocate and remove the Four Corners Project."

disposition is proper, "this court must be satisfied that FERC properly addressed all the relevant factors in dispute and that a formal hearing was unnecessary for the Commission to reach its conclusion." *Pac. Gas & Elec. Co*, 746 F.2d at 1386. The record before us is missing key documents, including the 1960 Lease and 1966 Lease. Moreover, there is a material issue of fact as to whether the parties intended Supplement No. 3 to extend the Transmission Agreement's expiration date to July 6, 2041. FERC erred by not fully developing the record on these issues before making its determination that the Expiration Agreement changed the termination date. We vacate FERC's determination that the Expiration Agreement was required to be filed with FERC under section 205 of the FPA, and remand for additional proceedings.

**Petition DENIED in part, GRANTED in part, and REMANDED.**

The parties shall bear their own costs on appeal.